USDC SDNY
DOCU...
ELE...  ...Y FILED
DOC #:
DATE FILED: JUN 0 2 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

James Robinson,

    Plaintiff,

—v—

Entertainment One US LP, et al.

    Defendants.

14-cv-1203 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

  Plaintiff James Robinson brings this case against Entertainment One US LP ("Entertainment One") and Michael Olsen for employment discrimination, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, unjust enrichment, and quantum meruit. *See* Dkt. No. 35. The case primarily concerns Robinson's time as Senior Vice President and General Manager at an Entertainment One-owned record label between November 2011 and May 2013. Defendants now move the Court to compel Robinson to arbitrate his claims in light of an arbitration clause in his employment contract and to then either stay or dismiss this case. *See* Dkt. No. 36. Defendants further move for dismissal of the claims against Defendant Olsen both because the Court lacks personal jurisdiction over Olsen and because Plaintiff has failed to state a claim against Olsen under Rule 12(b)(6). For the reasons below, Defendants' motion to compel arbitration is DENIED. Nonetheless, their motion to stay or dismiss the case in favor of arbitration is GRANTED. Accordingly, the case is DISMISSED without prejudice.

I.      BACKGROUND[1]

Defendant Entertainment One is a record company headquartered in Port Washington, New York. *See* Am. Compl. ¶ 4. One of the company's record labels is Light Records, which specializes in producing gospel music. *Id.* ¶ 8. Plaintiff Robinson was hired by Entertainment One in 2005 and worked primarily in "A&R" (which the Court understands to mean Artists and Repertoire) at Light Records. *Id.* ¶ 14. In 2010, he was promoted to a managerial role at the label. *Id.* According to the amended complaint, Robinson received praise for his work in this role and was responsible for significant growth at Light Records. *Id.* ¶ 8.

In October 2011, Robinson emailed his superior, Defendant Olsen, regarding his level of compensation. *See* Olsen Decl, Ex. 1. The email indicated that Robinson had spoken with other producers working in A&R at competing labels and learned that his income was not commensurate. *Id.* Robinson noted in his email that he was in effect working at two jobs for the label, responsible for both A&R and also for general management of the label. *Id.* He requested that Olsen and Entertainment One sign him to a three year contract with an annual salary of $160,000. *Id.*

On November 1, 2011, Robinson and Entertainment One entered into an "Executive Employment Agreement." *See* Olsen Decl., Ex. 2 (the "Employment Agreement"); Am. Compl. ¶ 6. The Employment Agreement was to run from November 1, 2011 through December 31, 2014 and guaranteed Robinson an income of $150,000 each year. *See* Employment Agreement ¶¶ 3, 4. The contract described Robinson's duties in broad terms, requiring him to "faithfully devote his entire effort, time, attention, and energies to the operation of Light Records" and to

---

[1] The following facts are drawn from Plaintiff's Amended Complaint, *see* Dkt. No. 35, and, for the purpose of addressing this motion, are assumed to be true. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

"discharge all duties which are reasonably required of [him] from time to time by Entertainment One." *Id.* ¶ 2. It also provided specific terms governing termination of his employment. For instance, Robinson was entitled to a thirty day notice period in which to cure any deficiency in his performance that might otherwise constitute cause for his termination. *Id.* ¶ 7.2(b). Similarly, if Entertainment One sought to terminate Robinson's employment without cause, he was entitled to 135 days' notice. *Id.* ¶ 7.3. The primary issue in the present motion concerns the Employment Agreement's arbitration clause, which required the signatories to arbitrate "all claims, disputes and other matters in question between the parties to this Agreement arising out of or in any way relating to this Agreement or the breach thereof." *Id.* ¶ 11. Finally, the contract stipulated that the Employment Agreement constituted "the entire agreement of Entertainment One and the Executive. Oral changes will have no effect." *Id.* ¶ 20.

The parties proceeded amicably under the Employment Agreement for some time. However, in 2013, the relationship between Robinson and Olsen began to deteriorate. Around March or April 2013, Olsen demoted Robinson from Senior Vice President and General Manager of Light Records to manager of A&R at the label. *See* Am. Compl. ¶ 15. Robinson was informed of his demotion in an email that was sent to a number of his colleagues. *Id.* Around the time of his demotion, Robinson filed a complaint about Olsen with the company's human resources department. *Id.* ¶ 16. The department's internal investigation and report on the complaint were finalized on May 28, 2013. *Id.* On May 31, 2013, Robinson's employment was terminated by Entertainment One. *Id.* Robinson alleges that his termination occurred in violation of the termination clauses of the Employment Agreement. *Id.* ¶ 17.

On December 10, 2013, Robinson commenced arbitration against Entertainment One and Olsen before the New York office of the American Arbitration Association ("AAA"). *See* Aaron

Decl, Ex. 3. The arbitral complaint specified four causes of action: (1) breach of contract against Entertainment One; (2) breach of the covenant of good faith and fair dealing against Entertainment One; (3) intentional infliction of emotional distress against both Defendants; and (4) negligent infliction of emotional distress against both Defendants. *Id.* ¶¶ 25-45. Robinson failed to serve notice on Entertainment One and Olsen regarding the arbitration, although they were later made aware of the proceedings by the AAA. *See* Aaron Decl., Ex. 4. Entertainment One filed an answer and counterclaim in those proceedings, alleging that Robinson was in fact terminated for cause on a number of grounds, including sexual harassment of a client and attempting to take Entertainment One clients to a rival studio. *Id.*

On February 24, 2014, shortly after commencing arbitration, Robinson filed the instant action. *See* Dkt. No. 2. His complaint again brought four causes of action: (1) a violation of Title VII of the Civil Rights Act; (2) a violation of the New York State Human Rights Law ("NYSHRL"); (3) a claim for intentional infliction of emotional distress; (4) and a claim for negligent infliction of emotional distress. *Id.* ¶¶ 30-50. The substance of the complaint is virtually identical to the arbitral complaint, save that Plaintiff grafted on several paragraphs asserting a racial animus in Olsen's conduct. *Id.* ¶¶ 20-21. In fact, Plaintiff's complaint even mistakenly requests "[a]ny other relief the *Arbitrator* deems just and equitable." *Id.* at 7 (emphasis added).

For some period of time, the parallel actions proceeded in tandem. In the arbitration, the parties selected an arbitrator. The arbitrator denied Plaintiff's request to move for summary judgment, dismissed Olsen from the arbitration because he was not a signatory to the Agreement, and, in June 2014, stayed the arbitration pending this Court's adjudication of the instant motion. *See* Aaron Decl., ¶¶ 6, 7. Subsequently, in this action, the Plaintiff amended his complaint on

September 9, 2014. *See* Dkt. No. 35. The amended complaint added three causes of action against Entertainment One, including breach of contract, unjust enrichment, and quantum meruit. *Id.* ¶ 51-68. Although not described in the original complaint or the arbitral complaint, the amended complaint alleges that in October 2011 Olsen agreed that Robinson would be paid a three percent producer's fee on any albums he produced. *Id.* ¶¶ 52-56. Beyond the addition of these three counts, the correction of a prior reference to the arbitrator, and the allegation concerning the October 2011 agreement, the amended complaint is identical to the original. Shortly after Plaintiff's filing of the amended complaint, Defendants filed the instant motion seeking compulsion of arbitration and a stay or dismissal of this case. *See* Dkt. No. 36.

## II.     LEGAL STANDARD

Defendants move under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to either compel Plaintiff to arbitrate certain claims in this action, or, alternatively, for the Court to stay or dismiss the action pending arbitration. The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran,* 445 F.3d 121, 125 (2d Cir. 2006) (internal quotation marks omitted). The parties do not dispute that the agreement at issue here affects interstate commerce and, accordingly, there is no question that the FAA applies. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

The FAA reflects a "strong and 'liberal federal policy favoring arbitration agreements.'" *Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625 (1985)). Nonetheless, because "[a]rbitration is a matter of contract . . . a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." *Ragone,* 595 F.3d at 126

5

(quoting *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004)) (alterations omitted). A court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010) (emphasis in original). "In this endeavor, as with any other contract, the parties' intentions control." *UBS Fin. Servs., Inc. v. W. Va. Univ.*, 660 F.3d 643, 661 (2d Cir. 2011) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)).

Defendants first move under § 4 of the FAA, which allows parties to enforce arbitration agreements by requesting that the district court issue an "order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Alternatively, if the Court will not compel arbitration, the Defendants seek a stay pursuant to § 3 of the FAA, which allows the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

The Court's inquiry is essentially the same under both provisions. "The Second Circuit has made clear that in determining both whether a stay under § 3 is appropriate and whether an order compelling arbitration is appropriate under § 4, the court must resolve four issues: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some but not all claims are arbitrable, whether the remaining claims should be stayed pending arbitration." *SDD99, Inc. v. ASA Int'l, Ltd.*, 06-cv-6089 (CJS), 2007 WL 952046, at *5

(W.D.N.Y. Mar. 29, 2007) (citing *JLM Indus.*, 387 F.3d at 169 (interpreting § 4); *Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 75-76 (2d Cir. 1998) (interpreting § 3)).

**III.   DISCUSSION**

Of the Plaintiff's seven claims in this case, only two are presently being disputed in the arbitration – the intentional and negligent infliction of emotional distress claims.  Plaintiff's two employment discrimination claims have not been raised in the arbitration and his three newest contract claims concern an allegedly distinct October 2011 agreement which, Plaintiff alleges, is unrelated to the Employment Agreement containing the arbitration clause.  Defendants move to compel Robinson to arbitrate these five claims as part of the arbitration he elected to commence in December 2013.

**A.   Defendants' Requested Relief Is Unavailable Under § 4 of the FAA**

As a preliminary matter, the Court is unable to grant the Defendants their requested relief under 9 U.S.C. § 4.  As many courts have observed, that section paradoxically empowers district courts to "direct[] that such arbitration proceed in the manner provided" in an agreement, but with the caveat that the "hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.  This proves problematic where the *situs* for arbitration specified in the contract falls outside the judicial district in which the motion to compel is filed.  Such is the case here.  The Employment Agreement specifies that "all claims, disputes and other matters in question between the parties to this Agreement arising out of or in any way relating to this Agreement or the breach thereof, shall be decided by an arbitration to be conducted in Nassau County, State of New York." *See* Employment Agreement ¶ 11.  Nassau County, New York is located within the jurisdiction of our sister district, the Eastern District of New York.

Despite the geographic proximity between this Court and the specified location for arbitration in this case, "courts within this Circuit consistently have construed the venue limitation imposed by section 4 as a statutory restriction on the court's power, notwithstanding the provisions of the arbitration agreement." *Couleur Int'l Ltd. v. Saint-Tropez W., a Div. of California Fashion Indus., Inc.*, 547 F. Supp. 176, 177-78 (S.D.N.Y. 1982). *See also Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*, 641 F. Supp. 2d 196, 202 (S.D.N.Y. 2009) (finding the court "lack[ed] authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district" where movant sought to compel arbitration in Arizona). Accordingly, the "Court will consider Defendants' motion under Section 3 of the FAA where it more properly belongs." *Duran v. J. Hass Grp. L.L.C.*, 10-cv-4538 (RRM) (SMG), 2012 WL 3233818, at *2-3 (E.D.N.Y. June 8, 2012) *aff'd,* 531 F. App'x 146 (2d Cir. 2013). *See also Symphony Fabrics Corp. v. Knapel,* 07–cv–6606 (GEL), 2008 WL 2332333, at *3 n.2 (S.D.N.Y. Jun. 2, 2008) (treating a motion to compel arbitration under a contract contemplating arbitration in New Jersey as seeking the only "available" remedies—dismissal or stay under § 3). Moreover, "[a]lthough Section 3 contemplates only a stay of an action in favor of arbitration, district courts also have the 'discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated.'" *Duran*, 2012 WL 3233818, at *3 (quoting *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001), *aff'd* 91 Fed. App'x 702 (2d Cir. 2002)). *See also Johnson v. Tishman Speyer Props., L.P.*, 09–cv–1959 (WHP), 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009). Accordingly, the Court now resolves the four issues identified by the Second Circuit as controlling whether this case is referable to arbitration, thus meriting a stay or dismissal under § 3.

> **B.   Plaintiff's Claims Are Referable to Arbitration Under the Employment Agreement**

8

To ascertain whether Plaintiff's claims are referable to arbitration under § 3, the Court must first "determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *Oldroyd*, 134 F.3d at 75-76 (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).

As to the first factor, the parties do not dispute the existence of their agreement to arbitrate. The core dispute between the parties relates to the second issue – the scope of the arbitral agreement. Defendants contend that the parties signed an intentionally broad arbitration agreement, inclusive of "all claims, disputes and other matters in question between the parties to th[e] Agreement arising out of or in any way relating to this Agreement or the breach thereof." *See* Employment Agreement ¶ 11. As Defendants correctly note, courts within this Circuit have deemed similarly worded clauses to represent the "paradigm of a broad clause." *Bulkenstein v. Taptu, Inc.*, 14-cv-1812 (RWS), 2014 WL 5089385, at *3 (S.D.N.Y. Oct. 9, 2014) (quoting *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)). If an arbitration clause is deemed broad, it "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

Plaintiff provides no such positive assurance. Robinson insists that his employment discrimination claims "arise[] out of E-One [sic] violations of federal discrimination laws" and is "actually about discriminatory treatment inflicted on Robinson by E-One during his

employment." Opp. 12. This argument is completely belied by the plain text of Plaintiff's amended complaint, which states that Robinson's termination was

> in complete violation of Robinson's Employment Contract. There is no doubt that retaliation was the reason for the termination. Olsen refused to keep Robinson in his contractual position at all costs. Fair dealings and contract relations was [sic] not as important as firing an African-American that complained about Olsen to the Human Resources Department. Olsen made sure Robinson was gone within 72 hours of the completed discrimination investigation relating to Olsen.

Am. Compl. ¶ 17.

The Court adheres to the reasoning in *Oldroyd*, where the Second Circuit considered a nearly identical issue to the one presented here. That case concerned an arbitral clause making "[a]ny dispute, controversy or claim arising under or in connection with [Oldroyd's employment agreement]" referable to arbitration. *Oldroyd*, 134 F.3d at 76. The Second Circuit similarly concluded that this broad language created a presumption of arbitrability. *Id.* The plaintiff in *Oldroyd*, as here, "provide[d] only a conclusory allegation that he did not intend for the arbitration clause in his employment agreement to encompass a claim for retaliatory discharge." *Id.* at 77. The panel concluded not only that this failed to overcome the presumption of arbitrability, but also that "even without such a presumption, the contractual language is sufficiently broad to encompass a claim of retaliatory discharge." *Id.* The appeals court found "untenable Oldroyd's contention that a claim for retaliatory discharge does not constitute 'a claim relating to' the agreement governing the terms and conditions of his employment." *Id.* Applying *Oldroyd*, this Court concludes, first, that Plaintiff has failed to present any reason to disregard the presumption of arbitrability attaching to clauses such as the one here and, second, that the plain text of the agreement is sufficiently broad to encompass possible claims of retaliatory discharge.

Plaintiff's three new contract claims similarly fall within the scope of the arbitration clause. Plaintiff contends that these new claims relate to a distinct, oral contract made between Entertainment One and Robinson in October 2011 concerning his role as a music producer for Light Records and therefore fall outside the scope of the Employment Agreement. *See* Opp. 19; Robinson Decl. ¶ 7. But these claims also 'arise out of or relate to' the Employment Agreement because they plainly implicate numerous provisions within that agreement. For instance, the Employment Agreement, several times, disclaims the existence of any separate contract or employment position for Robinson beyond the one contemplated in that agreement. The Employment Agreement states that "[u]nless [Robinson] *receives the prior written consent* of Entertainment One, Robinson shall not, during the term of this Agreement, engage in any other business activities or enterprise whatsoever." *See* Employment Agreement ¶ 2 (emphasis added). Further, the agreement states that it constitutes "the entire agreement of Entertainment One and [Robinson]. Oral changes will have no effect. It may be altered only by a written agreement signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought." *Id.* ¶ 20.

Second, the Employment Agreement explicitly anticipated the sort of intellectual property issues implicated by Robinson's new claim that he was entitled to an additional producer's fee. The agreement explains that such intellectual property "shall be deemed Works-for-Hire" and "shall be owned exclusively throughout the world by Entertainment One in perpetuity." *Id.* ¶ 9.4. Indeed, although Robinson claims the October 2011 oral agreement entitled to him to executive producer royalties on top of his normal salary, the Employment Agreement states that any intellectual property developed by Robinson "will be promptly

11

assigned by [Robinson] to the Entertainment One, all without any additional compensation therefor." *Id.*

Courts have routinely concluded that arbitral agreements may cover separate agreements or contracts that relate to the substance of the agreement containing the arbitral clause. For instance, in *Doctor's Associates, Inc. v. Quinn* the parties signed a written Franchise Agreement containing an arbitration clause. 42 F. Supp. 2d 184, 187 (D. Conn.) *aff'd*, 205 F.3d 1322 (2d Cir. 1999). The plaintiff in that case sued on the basis of an alleged separate oral contract governing loss sharing between the parties. *Id.* The Court concluded it was "hard to see how a court could then forego [consideration of the written contract] in resolving the dispute over the oral agreement." *Id.* Such is the case here. Because of the overlapping issues between Plaintiff's new allegations and construction of the employment contract, adjudication of the Plaintiff's rights under the alleged oral contract would plainly be impossible without reference to the Employment Agreement. *See also Int'l Talent Grp., Inc. v. Copyright Mgmt., Inc.*, 629 F. Supp. 587 (S.D.N.Y. 1986) (concluding that alleged agreement was subject to arbitration clause in a separate agreement long as "it relates to the subject matter" of the agreement containing the clause). Indeed, this is best evinced by Plaintiff's own email to Defendant Olsen, which insisted on negotiation of the Employment Agreement for the very reason that Robinson was working both in a managerial and production capacity at Light Records. *See* Olsen Decl., Ex. 1. Because the issues raised by this alleged separate oral contract "'touch matters' covered by the parties' [employment agreement] . . . those claims must be arbitrated, whatever the legal labels attached to them." *Genesco*, 815 F.2d at 846 (quoting *Mitsubishi*, 473 U.S. at 624 n.13).

Accordingly, the Court concludes that each of the claims raised by Plaintiff's amended complaint fall within the scope of the arbitral clause contained in the Employment Agreement.

Indeed, concluding otherwise would require the Court to ignore the fact that Plaintiff's original complaint, amended complaint, and arbitral complaint are virtually identical and concern the same core factual narrative. *See Olsen Decl.*, Exs. 1-3. Because Robinson has presented essentially identical factual issues to both this Court and the arbitrator, the Court concludes that the arbitral agreement encompasses all of the claims raised by Plaintiff in this case. *See Genesco*, 815 F.2d at 846 ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."); *Better Benefits, Inc. v. Protective Life Ins. Co.*, 03-cv-2820 (LAP), 2004 WL 633730, at *4 (S.D.N.Y. Mar. 30, 2004) (party failed to overcome presumption of arbitrability where "the claims and factual allegations asserted in the Complaint are identical . . . to those pending in the arbitration").

The final two issues are quickly dispatched and similarly mandate arbitration of Plaintiff's claims. As to the third issue, there is no real dispute that claims under Title VII and the NYSHRL are arbitrable. *See, e.g., Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (discussing purpose and history of Title VII and concluding Congress did not intend to preclude arbitrability); *Johnson*, 2009 WL 3364038, at *3 (citing *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993)) (race discrimination claims under the NYSHRL are arbitrable). Finally, the Court need not consider the fourth issue because all of Robinson's claims in this case are arbitrable under the Employment Agreement.

### C. Waiver and Unconscionability

Robinson argues that, even if the claims in his amended complaint are encompassed by the arbitral clause in the Employment Agreement, the clause is unenforceable in this case because he did not waive his right to pursue his Title VII claims in court and because

enforcement of the clause would be unconscionable. Neither of these arguments is availing to Plaintiff.

Plaintiff's waiver argument rests entirely upon non-binding precedent that has been repeatedly rejected by courts within this Circuit. Namely, Robinson cites *Prudential Insurance Co. of America v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994) for the proposition that an explicit waiver of the right to a judicial forum or actual knowledge of such a waiver is required to arbitrate a discrimination claim. As an initial matter, this rule has long been rejected in this Circuit. *See, e.g., Desiderio*, 191 F.3d at 203 (agreeing with the view of the "majority of circuits" and rejecting *Lai*); *DeGaetano v. Smith Barney, Inc.*, 95-cv-1613 (DLC), 1996 WL 44226, at *7 (S.D.N.Y. Feb. 5, 1996) (noting that many courts within this district have expressed disagreement with *Lai*); *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 107 (S.D.N.Y. 1995) ("The reasoning of *Lai* has been criticized by courts in this and other Circuits as contrary to Supreme Court precedent"); *Rice v. Brown Bros. Harriman & Co.*, 96-cv-6326 (MBM), 1997 WL 129396, at *4 (S.D.N.Y. Mar. 21, 1997) (collecting cases rejecting *Lai*).

Moreover, this case is distinguishable from *Lai*. In that case the Ninth Circuit found that the employees "were unaware that they signed any document that contained an arbitration clause [and] were not otherwise on notice that they might be agreeing to arbitrate employment disputes." *Lai*, 42 F.3d at 1303. Unlike in *Lai*, Robinson was not signing a form contract, but rather negotiated the particular terms himself. *See* Olsen Decl., ¶ 6; Ex. 1. Moreover, whereas the *Lai* plaintiffs were unaware that the clause required them to arbitrate employment disputes, the arbitration clause at issue here was contained *within an employment agreement* and thus obviously pertained to employment-related disputes, such as retaliatory or discriminatory discharge. Finally, Robinson himself has already initiated arbitration on the very issues that he

14

now claims are non-arbitrable. His negligent and intentional infliction of emotional distress claims presently in arbitration are premised on the same factual allegations that form the basis of his Title VII and NYSHRL claims. In sum, "plaintiff's claim of ignorance as to the requirement to arbitrate employment disputes is unpersuasive and does not vitiate h[is] agreement" with Entertainment One. *Schuetz v. CS First Boston Corp.*, 96-cv-5557 (DC), 1997 WL 452392, at *3 (S.D.N.Y. Aug. 8, 1997). *See also Raiola v. Union Bank of Switzerland, LLC*, 47 F. Supp. 2d 499, 506 (S.D.N.Y. 1999) (rejecting waiver argument where plaintiff "provide[d] little basis to counter the weight of authority that a pre-dispute agreement to arbitrate . . . voluntarily entered into by the Plaintiff, compels arbitration of Title VII and other employment claims.")

Plaintiff's unconscionability argument is premised on non-relevant, out of Circuit precedent. As an initial matter, however, the Court rejects the Defendants' argument that the issue of unconscionability should be referred to the arbitrator. "It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). *See also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (holding that where a party challenges the validity of the agreement to arbitrate, rather than the contract as a whole, the federal court "must consider the challenge before ordering compliance with that agreement"). Accordingly, when an arbitration agreement does not contain "an antecedent agreement delegating the question of the agreement's enforceability to an arbitrator," the question of unconscionability is a question for the Court. *Kuehn v. Citibank, N.A.*, 12-cv-3287 (DLC), 2012 WL 6057941, at *3 (S.D.N.Y. Dec. 6, 2012) (noting that the Supreme Court, in *Rent-a-Ctr.*, recognized the ability of parties to delegate "gateway" issues to the arbitrator). *Cf. Contec Corp.*

15

*v. Remote Solution, Co., Ltd.,* 398 F.3d 205, 209 (2d Cir. 2005) ("[W]e have held that 'the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'")

The question of unconscionability is governed by state law. *See Washington v. William Morris Endeavor Entm't, LLC*, 10-cv-9647 (PKC) (JCF), 2011 WL 3251504, at *6 (S.D.N.Y. July 20, 2011). The parties do not dispute that New York law governs the contract. *See* Employment Agreement ¶ 11. Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made . . ." *Washington*, 2011 WL 3251504 at *6 (quoting *Gillman v. Chase Manhattan Bank. N.A.*, 73 N.Y.2d 1, 10 (1988)). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, per se]." *Ragone*, 595 F.3d at 121–22 (quoting *State v. Wolowitz*, 96 A.D.2d 47, 66 (N.Y. App. Div. 1983)). Furthermore, the Supreme Court has emphasized that "a court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011) (internal quotations removed). In other words, the Court must apply New York's unconscionability standard to the arbitration clause as it would any other contract clause.

Despite invoking the doctrine of unconscionability, Plaintiff does not attempt to fashion an argument under New York law, instead relying on a mélange of cases from outside this Circuit and this state. The one relevant case cited to by Plaintiff concluded that an arbitration clause was not unconscionable. *See Desiderio*, 191 F.3d at 207. Plaintiff has not alleged any

procedural unconscionability such that "he lacked meaningful choice" in entering into the contract and indeed it is hard to imagine how he could construct such an argument in light of the fact he was already employed by Entertainment One for nearly six years before requesting that they supply him with the very contract at issue. *See* Olsen Decl., Ex. 1; Am. Compl. ¶¶ 6, 14. Moreover, despite now claiming that the clause is unconscionable, Plaintiff himself *invoked* the clause for his own benefit by commencing arbitration in December 2013. *See* Aaron Decl., Ex. 3. Accordingly, the Court finds no procedural defect in the negotiation of the arbitration clause. *See McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995) (party possessed "meaningful choice" when it participated in the drafting and negotiation of clause at issue).

Although Plaintiff's opposition does not phrase it in such language, the complaint that Robinson is obligated to pay half the costs of the arbitration can be interpreted as alleging a form of substantive unconscionability. *See* Opp. 16. However, this is again a puzzling argument due to the fact that Plaintiff was the party who actually invoked the arbitration clause. "Mandatory arbitration clauses that bind both parties are generally not substantively unconscionable." *Nichols v. Washington Mut. Bank*, 07-cv-3216 (JG) (VVP), 2007 WL 4198252, at *8 (E.D.N.Y. Nov. 21, 2007) (citing *Desiderio,* 191 F.3d at 207). Moreover, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 598 (S.D.N.Y. 2012) (quoting *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). Although he claims it poses a financial hardship, Plaintiff has not provided any relevant information regarding the expected cost of arbitration, including its cost relative to the cost of litigation in this Court, and has therefore failed to meet

17

this burden. *See Hamerslough v. Hippie*, 10-cv-3056 (NRB), 2010 WL 4537020, at *3-4 (S.D.N.Y. Nov. 4, 2010) ("The mere 'risk' of prohibitive costs is too speculative to justify the invalidation of an arbitration agreement . . . Here, plaintiff makes no showing whatsoever regarding his ability to pay the fees and costs, the cost differential between arbitration and litigation in court, or whether the cost differential is so substantial as to deter the bringing of the claims.") (internal quotations removed). Indeed, Plaintiff's argument on this point is particularly weak in light of the fact that it entirely neglects his own decision to commence both the arbitral and court proceedings in New York, diminishing any differential in cost or logistical burden. *See Chestnut v. Whitehaven Income Fund I, LLC*, 12-cv-8854 (PAC), 2014 WL 5388562, at *2-3 (S.D.N.Y. Oct. 23, 2014) ("Plaintiff focuses on the costs involved in filing for arbitration and traveling to New York to arbitrate. The argument has no substance; after all, it was Plaintiff who chose a New York court to initiate [his action.]") Accordingly, Plaintiff has demonstrated neither procedural nor substantive unconscionability.

### D. Dismissal of the Case is Appropriate

Having concluded that the arbitral agreement is enforceable and that all of Plaintiff's claims are encompassed within that agreement, "[t]here remains only to decide whether to stay or dismiss the action." *Duran*, 2012 WL 3233818, at *5. In analogous cases, where arbitration is set to take place in another judicial district and all claims between the parties are subject to that arbitration, courts generally find "no useful purpose [that] will be served by granting a stay" and therefore usually find that "dismissal is the appropriate remedy" under § 3 of the FAA. *Id.* (citing *Johnson*, 2009 WL 3364038, at *4 (quotation marks omitted)). *See also Milgrim*, 142 F. Supp. 2d at 476 (concluding "dismissal of the complaint is appropriate" under § 3 of the FAA where "the parties' agreement to arbitrate encompasses all of the issues raised in [the]

complaint"); *Nulife Entm't, Inc. v. Torres*, 698 F. Supp. 2d 409, 414 (S.D.N.Y. 2010) ("Because all of the disputes raised in the plaintiff's complaint in this case are subject to arbitration and no purpose will be served by a stay, the plaintiff's complaint is dismissed without prejudice.")

The Court agrees with the reasoning of these cases. Indeed, their reasoning applies with particular force here because arbitration has already commenced and reached a relatively advanced stage. *See* Aaron Decl. ¶ 7. Because all of Plaintiff's claims in the amended complaint are encompassed within the enforceable arbitral agreement he negotiated with Entertainment One, there is no purpose in staying this case. It is therefore dismissed without prejudice.

## IV. CONCLUSION

In sum, the Defendants' motion to compel arbitration under § 4 of the FAA is DENIED. However, their motion under § 3 to stay or dismiss the case in favor of arbitration is GRANTED. For the reasons discussed above, this case is DISMISSED without prejudice. This resolves Dkt. No. 36. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: June 2, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge